**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re<br><br>**ALAN P. MUGFORD, D/B/A VISION REMODELING, A/K/A VDR CONSTRUCTION, INC.,**<br><br>                  **Debtor**<br>―――――――――――――――――<br>**DOUGLAS KEENE**<br>**MARY BETH SIDOROWICZ,**<br><br>                  **Plaintiffs**<br><br>v.<br><br>**ALAN P. MUGFORD, D/B/A VISION REMODELING, A/K/A VDR CONSTRUCTION, INC.,**<br><br>                  **Defendant** | **Chapter 7**<br>**Case No. 04-14261-RS**<br><br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 04-1265** |

**MEMORANDUM OF DECISION**
**REGARDING DEBT DISCHARGEABILITY**

By their complaint, Douglas Keene and Mary Beth Sidorowicz ask the Court to determine that their claim for damages against the Debtor arising from his alleged breach of a home improvement contract is excepted from discharge under 11 U.S.C. Section 523(a)(2)(A) and Section 523(a)(2)(B). More particularly, the Plaintiffs contend that the Debtor knowingly made a false representation when he portrayed himself to them as a skilled and experienced home improvement contractor capable of performing, and intending to perform, the work contemplated under the subject contract. The Debtor denies this contention.

# I
# Procedural History

On May 19, 2004, the Debtor filed a voluntary Chapter 7 petition, commencing the within case. On December 30, 2004, the Court entered an order of discharge in favor of the Debtor pursuant to §727(a) of the Bankruptcy Code.

On August 23, 2004, the Plaintiffs commenced the within adversary proceeding. Their complaint seeks an order under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(B) excepting from discharge their claim against the Debtor for damages in excess of $100,000 from his breach of a home improvement contract for renovation and addition to their home ("Residence"). Their claim for damages has not yet been adjudicated. In this proceeding, the Court determines the *dischargeability* of the claim, not the Debtor's *liability* or the *damages* therefor. On July 19, 2006, the Court held a trial of the complaint and now states its findings of fact and conclusions of law in the matter so tried. For the reasons set forth below, the Court will dismiss the Plaintiffs' complaint for determination of dischargeability.

# II
# Findings of Fact

On April 7, 2003, the Plaintiffs and the Debtor entered into a contract for certain modifications, renovations and improvements at the Residence ("Contract") ("Project"). The Contract did not specify a payment or performance schedule.[1] It did provide for a Project cost of $204,685 and for a $12,500 deposit which the Plaintiffs paid to the Debtor on or about the Contract date. The Plaintiffs made two further payments to the Debtor: $35,000 on May 10,

---

[1] Although the Contract is silent on this point, there is evidence suggesting that the parties expected the Project to be completed by year-end.

2

2003 and $20,000 on August 24, 2003.[2]  The Project comprised a new garage, laundry, bath and mud room; an addition to the kitchen; and various other items.

Before hiring the Debtor, the Plaintiffs conducted due diligence, checking the Debtor's references and inspecting the Debtor's prior projects.  They concluded that he had the skill and experience to complete the Project in a timely manner.  At that time, the Debtor had approximately twenty years experience as a carpenter and approximately five years experience as a licensed general contractor with numerous completed projects.

At the outset, the Debtor encountered two unanticipated and previously undisclosed construction tasks not contemplated in the Contract:  the need for an environmentally compliant fence at or bordering on a wetlands area adjacent to the Residence and the need to re-route the utility connections to the Residence (i.e., water and electricity lines).  In addition, despite his urging otherwise, the Plaintiffs suspended his work shortly after he started to permit the construction (by another contractor) of a pool at the Residence.  Hence, he did not begin actual Project construction for at least a month after the Contract, having interrupted his work schedule to accommodate the pool installation.  The pool was completed in mid-July 2003.

During the period after completion of the pool and especially during September through December 2003, the Debtor appeared only intermittently at the Residence, ultimately completing the fence installation, the utilities relocation and three separate foundations (one of which sustained a crack and was apparently replaced by a successor contractor) but nothing more.  During that same period, the Plaintiffs tried, without success, to communicate effectively and

---

[2] The Plaintiffs contend that the $20,000 payment was intended for the purchase of windows pursuant to the Contract while the Debtor testified that it was a Project progress payment in a lesser amount than he requested.  The Plaintiffs did not testify.  I find the evidence inconclusive as to the payment purpose.

3

regularly with the Debtor regarding his sporadic and unsatisfactory performance on the Project.

The Debtor deposited the monies paid to him by the Plaintiffs into his operating account and neither escrowed nor earmarked these funds for the Project. The Contract did not require such escrow or earmarking and the Plaintiffs did not request it. The Debtor values his work on the Project at $40,000-$45,000.

The Debtor could only remember one or two names of the subcontractors he employed on the Project. He never purchased any materials for the Project other than the foundation concrete. He failed to introduce any supporting documentary evidence at trial regarding his performance.

In January 2004, the Debtor acknowledged to the Plaintiffs in writing his poor performance, attributing it to his over-commitment to multiple jobs and unspecified personal problems. Despite the Debtor's assurances to the Plaintiffs that he could resume the Project on a better-managed basis, the Plaintiffs had lost confidence in the Project and in the Debtor. In February 2004, concerned about the construction disarray at the Residence, the onset of a particularly cold winter, the Debtor's unsatisfactory performance and their payment of $67,500 with little to show for their money but a fence, a utilities relocation and three foundations (one defective), they elected not to proceed under the Contract and hired another contractor.

Thereafter,[3] the Plaintiffs brought a complaint against the Debtor regarding the Project with the regulatory agency charged with oversight of home improvement contractors, the Board of Building Regulations and Standards of the Massachusetts Department of Public Safety ("Board"). On June 29, 2005, after notice and hearing, the Board issue its decision, finding that the Debtor failed to complete the Project and failed to include a Project payment or performance

---

[3] The parties do not specify when.

4

schedule in the Contract as required by law. M.G.L. c.142A, §§ 17(2) and 2(a). For those violations, the Board suspended his contractor's license for 30 days, levied a $500 fine and issued a formal reprimand. The Board's factual findings are comparable to the allegations made in the complaint before this Court.

### III
### Discussion
### a. Section 523(a)(2)(A)

In order to establish that a debt is non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code, the Plaintiffs must prove that, in obtaining money from them, (1) the Debtor made a knowingly false representation or made a representation in reckless disregard of the truth; (2) the Debtor intended to deceive the Plaintiffs; (3) the Debtor intended the Plaintiffs to rely upon the false representation; (4) the Plaintiffs actually relied on the false representation; (5) the Plaintiffs' reliance on the false representation was justified; and (6) the Plaintiffs' reliance on the false representation caused damage to them. *In re Spigel*, 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). See also *In re Creta*, 271 B.R. 214, 217 (1st Cir. BAP 2002) and *In re Lyle*, 334 B.R. 324, 331-332 (Bankr.D.Mass. 2005). The Plaintiffs bear the burden of proof on each element and must meet that burden by a preponderance of the evidence as to all elements. *In re Spigel*, 260 F.3d at 787.

Here, the Plaintiffs contend that the Debtor's knowingly false representations, on which they relied and which he made with the intent to deceive them, were (a) that he was a skilled and experienced home improvement contractor who was capable of doing the work required by the Contract and (b) that he intended to complete the Project for the Contract price and in a timely fashion. These representations were false, the Plaintiffs contend, in that (a) the Debtor did not

5

have—and knew he did not have—the experience and competence to complete the Project and (b) that he had no intention of completing the Project within the terms specified in the Contract. They cite as evidence supporting their contentions the following: the Debtor failed to complete the Project; he never purchased Project materials; he accepted payment from them but used their funds, in part, for other projects without escrow or earmarking; he was sanctioned by the Board based on adverse findings consistent with their allegations against him; the $204,685 Project cost estimate was far short of the actual cost of completion; he provided no documentation for his work on the Project or his use of Project funds; he did not recall the names of the subcontractors he employed during the approximate eight-month duration of the Project; he not only failed to complete any of the required improvements but rather damaged the Residence, leaving portions of it in disarray and in a deconstructed state. They also cite comparable complaints against the Debtor by two other homeowners who disputed his workmanship and/or construction costs during the Project period.

The facts amply support a finding that the Debtor performed in a less than workmanlike manner in respect of the Project and may well be liable for breach of the Contract. For dischargeability purposes, however, the issue is not whether he failed to perform but rather whether he falsely presented himself to them as capable of performing and intending to do so when he entered into the Contract.

The evidence supports the Debtor's position. He *was* a registered home improvement contractor with the requisite prior experience when he entered into the Contract and commenced the Project. Indeed, the Plaintiffs had satisfied themselves as to his qualifications before the Contract was made and the Project commenced. He *had* completed other home improvement

projects satisfactorily. There were no prior complaints regarding his work at the time of the Contract. He *did* install the required fence and *did* relocate the utilities, two Project add-ons disclosed to him after the execution of the Contract, and he *did* build the three required foundations.

I find the Debtor's testimony credible. I further find that he was experienced and skilled for the Project, and did not misrepresent that skill and experience; and that he intended to apply that skill and experience to the Project but was overburdened by other projects and his inability to manage them all. The evidence indicates that, when he entered into the Contract, he was fully capable of performing it and fully intended to perform. He commenced work and returned to it after an interruption for pool installation. He performed the fence, utilities and foundation work. That he failed to complete the Project does not negate his original intention. The evidence reflects that he did a poor job on the Project. The evidence does not reflect or support a finding that he was incompetent to perform the Project in the first place or that he never intended to perform the Project or to comply with his obligations under the Contract when he made the Contract and commenced the Project.

I find that the Plaintiffs have failed to meet their burden by a preponderance of the evidence to demonstrate that the Debtor knowingly made a false representation regarding his skill and experience as a home improvement contractor and his intention to perform the Project in accordance with the Contract. Hence, the Section 523(a)(2)(A) cause of action is not proved.

### b. Section 523(a)(2)(B)

In order to establish that a debt is nondischargeable under Section 523(a)(2)(B) of the Bankruptcy Code, the Plaintiffs must prove that the Debtor obtained money from them by the use of a statement in writing (1) that is materially false; (2) respecting his financial condition; (3) on which the Plaintiffs reasonably relied; and (4) with the intent to deceive them. *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995). See also *In re Mann*, 40 B.R. 496 (Bankr.D.Mass. 1984). Here, as well, the Plaintiffs bear the burden of proof on each element and must meet that burden by a preponderance of the evidence as to all elements. *In re Cohn*, 54 F.3d at 1114.

The Court has searched the trial record without success for any written statement respecting the Debtor's financial condition furnished to the Plaintiffs by the Debtor (much less one that is materially false in any respect). There is no such document among the twenty-two admitted exhibits, nor is there any testimony regarding such written statement. I find that the Plaintiffs have failed to meet their burden by a preponderance of the evidence that the Debtor obtained money from them by use of a materially false written statement regarding his financial condition. Hence, the Section 523(a)(2)(B) cause of action is not proved.

## IV
### Conclusion

For the reasons stated above, judgment shall enter dismissing the complaint for determination of dischargeability.

Date: July 28, 2006

*Robert Somma*
Robert Somma
United States Bankruptcy Judge

cc: Alan P. Mugford
    Bradford Eliot Keene, Esq., for Plaintiffs